Please rise. The court is now in session. Please be seated. Thank you. Will the court please call the next case? 315-035-2. People with disabilities. Accused by Don Duffy v. Darin Johnson v. Gilbert Lenz. Counsel, you may proceed. Thank you, Your Honor, and good morning. My name is Gilbert Lenz, and I'm here on behalf of Darin Johnson. Your Honor, I'm happy to answer any questions you have about any of the several issues raised in the briefs. However, I'll be focusing this morning on Argument 1, the application of last year's Supreme Court decision in Bradford to this case. And time permitting, I'll also be touching briefly on Argument 3 regarding the judge's unlawful ban on juror note-taking during this trial. Your Honor, it's undisputed that Darin Johnson walked into a Walmart while it was open for business. He never entered an area of the store that was unauthorized to the public, and he left while the store was still open. The state believed that it had evidence that Mr. Johnson stole $76 worth of girls' clothing from inside the store to give to his daughter. Based on those facts, they charged Mr. Johnson with retail theft for merchandise under $300, which is normally a misdemeanor, which here would have been a Class 4 probationable felony. But based on those same facts, the state also charged Mr. Johnson in this $76 run-of-the-mill shoplifting case with burglary, a Class 2 felony with a prison sentence of 3 to 7 years, which of course here was a sentence of 6 to 30 years. The jury found Mr. Johnson not guilty of the retail theft, but guilty of the burglary. But after the Illinois Supreme Court's decision last year in Bradford, that burglary conviction cannot stand. Now, burglary has three essential elements, which this Court well knows. It's an act of either entry or remaining without authority with the intent to commit a theft. And the reason the Illinois Supreme Court last year said that shoplifting could not be burglary hinged on this interpretation of the without authority element, the language without authority. The Illinois Supreme Court last year said that without authority depends on an individual's physical authority as a member of the public to be where he was. So I just wanted to quote that language from the Supreme Court to explain the importance of that decision here. Bradford said, defendant entered the store during regular hours, never entered areas of the store which were optimist to the public, shoplifted several items, then left while the store was open. Defendant did not exceed the scope of his physical authority as a member of the public to be in the store. And based on those facts, no burglary conviction could be obtained. The primary reason the Court held this was because the legislature in 1975 created the offense of retail theft. In that statute, the legislature set out in a very carefully crafted way a means of regulating and punishing a specific form of theft. That is when you walk into an open retail establishment and steal merchandises for sale. What we call shoplifting. What was the intent of passing that legislation when you had this, some would say convoluted idea that authority was premised upon intent to commit a theft? What was the intent of creating this separate retail theft? Well, the only Supreme Court last year said that the intent was clearly to take this specific form of theft, shoplifting, and cut it out from underneath the burglary statute. Well, we know the legislature doesn't do anything except what it's influenced to do, and obviously retail lobby probably pushed this piece of legislation. We know the legislature generally doesn't look with any favor upon defendants. Okay. So, I mean, what was it? Because the prosecution was either one not successful, or what was it? Do you know? I mean, I'm just asking. Yeah, that would be probably deep down in legislative history, which I have not personally researched. I can tell you what the only Supreme Court said that last year in Bradford, that the legislature plainly intended that the retail theft statute occupy the field when it comes to this particular form of theft. And this court, in fact- Well, they ruled as a matter of law that that statute occupied the field under the facts of that case. But, I mean, they didn't say any legislative history, did they? They didn't say any specific quotations in the legislative history, no. Right, but they did say that they looked at the legislative history, and they found that the legislative intent was to specify that this particular form of theft would be governed by this statute. And this court said the same thing 40 years ago in two cases cited in the brief, that the retail theft statute was about a special form of theft, shoplifting, and that involves when you walk into an open business and never enter an area that's unauthorized to the public. And that's the line the Bradford court drew last year. And it's a very simple workable test. And it's just as workable when applied in this case to the other form of burglary, unlawful entry burglary. The question is not when the intent was formed, when the intent to steal was formed. It's where the defendant entered. So in several cases in the briefs, defense could still be burglary because the defendant plainly entered an area where he was not allowed to be. That, in fact, is the Weaver case, which predates the retail theft statute. In Weaver, the defendant entered an open business, but he did so with the intent to break into a locked change machine. Breaking into a locked change machine is not an area where the public is authorized to be. Same as in Hopkins, where the defendant reached into a cash register. Again, plainly an area where the public is not allowed to be. On the other side of that line is when a defendant entered. So you can reconcile Weaver with Bradford? Absolutely. Weaver, the holding of Weaver survives Bradford, certainly, because the Weaver defendant entered an area where the public was not authorized to be. And that's a very clear line. A locked coin box. A locked coin box, yes. Attached to presumably some, as a fixture, so to speak. Yes. He, in fact, had a whole set of, happened to be in that case, he had a whole set of keys that opened these boxes, and he was found with the keys and with $50, I believe, worth of coins from that box in his car. So he did enter an open business, but he did so with the intent to enter an area not authorized to the public. And Bradford tells us that that is the key question when you're deciding whether a case should be prosecuted as shoplifting, retail theft, or, on the other hand, burglary. And it's a very simple line. It's a very workable test, as the Supreme Court said last year. Bradford and the Fifth District case, it favorably cited. McDaniel will fall on one side of the line along with this case, the retail theft side, because in all three of those cases, including this case, the defendant never entered an area that was unauthorized to the public. And that's why, after Bradford, no shoplifting case with facts like this can be charged and found as burglary. How did we get to this idea that entering a place like a public retail establishment with the intent to commit therein a theft supported burglary charges, which are not in it? No. Prosecutors have had this in their toolbox for a number of years. That's exactly right, Your Honor. And it stems from the Weaver decision originally and probably before, but the key case here is the Weaver case from 1968, which, again, predated the retail theft statute. And Weaver held that that defendant who broke into the locked coin box in the laundromat committed burglary. In dictum, that court also held that whenever a defendant enters into an open business with the intent to steal inside, that could be charged as burglary. But that was dicta. But that was dicta because, in light of what Bradford said about the retail theft statute, you know, Bradford said that the retail theft statute, which came after Weaver, plainly manifested the legislation. Well, I mean, it was dicta in 1968, but yet it all then became, apparently, supported case law. Yes, and there have been cases from the appellate courts around the state since the retail theft statute was created, which affirmed burglary convictions. And some of those fall on the burglary side of the line that I just enumerated earlier, and some fall on the retail theft side. But I'm talking about the retail theft side. That's what we have here. Since 1968, somewhere along the line, that was transported into retail theft prior to 75 and that. Yes, right. So the Weaver decision. Based on dicta in Weaver. Is that what you're saying? I'm saying that Bradford rendered that part of Weaver dicta, yes, because Weaver did not need to go beyond the fact that, in light of what the Bradford court I believe was saying last year, that Weaver did not need to go beyond the fact that the defendant intended to enter an unauthorized area to find that was burglary. So after Bradford, whenever a defendant enters an open business, it's not burglary unless he intends and does enter a place that's not open to the public. And, again, like in Hopkins, which is an appellate court case since the retail theft statute, there they found burglary because that defendant reached into a cash register. And Richardson, similarly, the defendant entered an open store but went into an area that was marked employees only. Those are plainly areas where a burglary. So you would say that that pattern of entering the Wal-Mart and with an open cash store, putting your hand in and taking money out could be burglary. It certainly still could be based on Bradford and Bradford's interpretation of the burglary statute and the retail theft statute. Because that defendant plainly intended to enter and entering includes reaching into an area that the public is not allowed to be, definitely the cash register would meet that standard. And as the Bradford court said last year, it's a very workable test. It's a very common sense test. And that same common sense should apply to the unlawful entry form of burglary that Mr. Johnson was convicted of. And that's why his conviction should be reversed. So the line is employees only. That's where the line is. Employees only or maybe more specifically no public allowed. Well, or the cash register, the open cash register at Wal-Mart. Right. It should be presumed that a member of the public knows that he or she is not allowed to reach into the cash register of the business that they're in. So we don't get into this amorphous intent concept when you walk through the doors. That's exactly right, Your Honor. With Bradford, it's a very clear line, a very workable line, and it removes the question that we repose, which is whether there could be a constructive withdrawal of authority. There's no longer any question about whether the business constructively withdrew its authority, your authority to be inside. The question is now, did the defendant enter a place he was not allowed to be? And if he did not and remained in an area of the store that was open to the public? Well, and for burglary, a theft doesn't even have to be committed. All you've got to do is technically enter a place without authority with the intent to commit the theft when you walked in. That's exactly right. So six kids are standing outside the store, and they dare this kid to go and steal a Snicker bar, and he says, I'll go and steal that Snicker bar. So he goes in and he stands there and he looks at that Snicker bar and he goes, no, I can't do it. The store manager says, what's wrong? He says, well, I came in here to steal that Snicker bar, but gosh darn it, I just can't do it. He's guilty of burglary. That's exactly right, Your Honor. And Bradford, one of the reasons Bradford came to its conclusion is that absurd results come from applying burglary to the specific form of theft that we call shoplifting, that the legislature calls retail theft. The absurd results that are identified by the Bradford court are exactly present here when someone, that child that you discussed, is guilty of a Class II felony with a prison sentence of three to seven years. Largely it wouldn't have been gotten there if somebody had read the history of law, because burglary was based on the concept of trespass, I believe. Yes, exactly, yes. Historically. Historically, yes. The danger that the burglary statute is designed to prevent is the danger to the public of people being where they're not supposed to be. That's trespass. I'm sorry? Trespass. Yes. Whereas shoplifting, retail theft, is about the danger to the public of stealing items that are for sale. So with that, Your Honor, we would ask that you reverse Mr. Johnson's further conviction based on last year's decision from the Supreme Court in Bradford. Thank you, Mr. Chairman. Thank you. You have five minutes left. Counsel, you may respond. Thank you, Your Honors. Counsel? I know counsel wants to believe that burglary in a retail establishment is based upon where you go. Intent doesn't matter. I disagree with that. I think intent still does matter. And the reason why Bradford does not cover this fact situation is because Bradford dealt with the concept that this defendant charged with burglary knowingly and without authority remained within a building with the intent to commit a theft. Okay. But that's not what happened here. What happened here is the defendant formed the intent to commit the theft, and that's why he entered the building. I mean, I get your point, but in Bradford, the store was open. He was in the area available to customers. Right. And does it make any – and presumably, if you commit a theft, you had the intent to do it before you did it. You can't commit a theft without having the intent to commit the theft, right? So what logical difference does it make to say that if you form the intent just before stepping across the threshold into that store as opposed to forming the intent after you went into the store? You know what they taught us in law school? Pardon? This is a law school question. Well, we never went there. So what logical – what's the logical difference in a retail theft situation? Anyone could enter a store, okay? Their intent may be to just, you know, shop, look around, maybe to actually buy something. But in the course of doing that, they form the intent to pick up this item and steal it. That's retail theft. Let me ask you this. Do you think – let's say it's the mayor's kid or the judge's kid or the congressman's kid that goes in there and commits this. Do you think he's going to get charged here or she's going to get charged with burglary as opposed to retail theft? That situation I just gave you is retail theft. Pardon? Well, if they – like, say, some kids are standing outside. Hey, we got a break from school. Let's run down to Big Gulf and steal a Snickers bar. No, that's probably not going to happen. Yes, technically speaking, it is. I don't know of any kid that's stolen a candy bar, myself included, that was ever charged with that. That's exactly right. It seems to me that we've finally got to where we've gotten basically because of abuse of discretion. But there may be cases where it could have been, right, but abuse of prosecutorial discretion and overcharging people for what amounts to retail theft. Well, you know what? There could be some reasons why this defendant maybe should garner some sympathy. But on the other hand, he went to this Walmart with backpacks. And he, according to his own statement, his girlfriend, his ex-wife, whatever, told him if he didn't come up with some clothing, whatever, school clothing for his daughter, she was going to stop a visitation. So he goes to the Walmart with his backpacks and a co-defendant, a co-perpetrator. I don't know that that man was ever arrested. He puts the backpacks behind these machines in the vestibule of the Walmart store. But, I mean, I don't think the defendant disputes your position that he formed the intent before. I don't think that's the point. I mean, everybody seems to agree that the intent was formed before he walked through the door. But that being said, what percentage of retail, the people that commit retail theft, do you suppose committed, formed the intent to commit that theft after they got in the store? I think a lot of shoplifters do that. I don't... The difference is, is there evidence to prove that he formed the intent before he entered the Walmart? In this case, there certainly is. Not only did he do that, go in there, secret articles of girls' clothing in his pants and in his shirt, he left the store, put those articles in a backpack, and went back in for more. Now, come on. I mean, you know, I... So he's a thief. He's a burglar. Well, let's... One of the problems over the years with this... If I went outside and asked people what burglary was, I think most people would say burglary is a crowbar... Breaking into my house. Yeah. Right. And that's a burglar. That's a burglar. That's a burglar. And, again, based on that old concept of trespass, I just think the ordinary public thinks, well, what were the store hours? Was the store open? Et cetera. And so I'm just wondering if, as lawyers, we're creating a Charles Dickens, London, Old Bailey type of society here, and maybe the Supreme Court's trying to prevent that. Maybe, but the legislature didn't prevent it. The legislature defined the offense. They defined retail theft, too, after Weaver. Yeah. Yeah. But they defined burglary. But the Supreme Court said the whole reason they must have done that was for the very reason that they gave in Bradford. Yes, where we have a defendant who was charged with remaining in a retail establishment and then forming the intent to steal. That's retail theft. That's shoplifting. This is burglary. You know, it's hard to argue based on there are other cases, but after reading Bradford, what do you think the Supreme Court would do faced with this case? I don't know. We're going to find out. You'll get out your reading board. I don't blame you for not particularly liking this, but this is the law. Isn't it? This is not the law. Am I wrong about that? Well, maybe not, but don't you think it is just a little bit Victor Hugo to charge a guy with burglary for this for what everybody else, depending on maybe his status in the community, he's going to get charged with shoplifting. Yeah. He's pretty well adept at shoplifting. Well, but the retail theft statute was aimed at people that are pretty good at shoplifting, people with booster bags and stuff that they go into, quote, Macy's or you name it, and load stuff up. The retail theft statute, and it seems to me that there's incremental, depending on the amount stolen, the seriousness of the charge goes up, that the retail theft statute saves us of some people who might be pros at it. It has a quite substantive effect, I don't know. Well, if somebody goes into Macy's or you pick your department store along with these bags and clothes they've got that was compartments for taking stuff, there are a lot of pros out there. That seems to me also covered in the retail. They obviously had the intent when they walked in the store, and how does that differentiate from this case? It doesn't. Those people, if they walked in that store with the intent to commit the theft, with bags that they were putting property in, whatever, if you can prove that they had that intent, and maybe you prove it by the bags that they had with them. But the case law said you didn't have authority, you entered without authority because you had this intent. And the Supreme Court in Bradford said this authority is physical authority, not mental authority. In other words, did you go into an area where the public is allowed to be? And so how do we differentiate that on this case, even though that was that state charge that was laying in wait, you know, remaining, probably because maybe they didn't think they could prove that they had the intent once they got, but before they crossed the threshold. But when you look at the language in Bradford, and they talk about the, because it's not just intent, it is entering the store without authority. And so they said, well, the store's not authorizing you to come in here to steal. So when you look at the language in Bradford, it seems to me that the Supreme Court has said, well, we're talking about authority, we're talking about where you have the physical authority to be, as opposed to this metaphysical authority that what's on your mind when you come into our store. Well, Bradford didn't reverse a great body of law that went with the, you know, doctrine that if you have authority when you enter a retail establishment, but if the owner of that establishment knew that your intent was to steal, then your authority to enter would be vitiated. There's a body of law out there, cases that say that. That applies in this case. You straighten it out. Whoops. Unless you have any more questions, that's all I have. I have a question. All right. Okay. If the defendant is asked to leave, okay, and does so, would he be or should he be subject to burglary at that point? At what point is he asked to leave, after he picks up the property or before? Well, the idea you just gave that it looks like he's attempting to engage in retail theft, looking furtively, et cetera, et cetera, et cetera. The burglary is complete when he enters the building with the intent. In fact, it's not an element of just the intent to commit the theft. That's correct. In response to Judge Hogan's question. Well, I don't know how to answer that question because that's, you know, that's not here. I mean. No, no. But, I mean, this court in Bradford was talking about a scenario like that possibly. Yeah.  I'm just trying to understand. Isn't that dicta really then? What would be the subsequent charge? If they're dealing with the fact pattern that's non-existent in that case, isn't it sort of dicta? I mean, they're wondering what ifs. I mean, there are so many different fact patterns that can occur, whether it's shoplifting or retail theft or burglary. They're all quite closely related. But the idea that the intent doesn't matter, that's not accurate. Intent always matters. And when the intent is formed has always mattered. I don't think we can say Bradford did away with that. Well, with the exception of the language in Bradford seems to suggest that the intent, while it's not irrelevant, is the reason they said you, you know, the store, the doors of the store are open. Come public, buy our stuff. And so this guy goes, you say, well, you have the intent, you have to enter unlawfully, without authority. And so they said, well, that unlawful entry was because he had this intent to commit a burglary. Well, if they're saying you, by going in a place where the public is welcome, even with the intent to commit a theft, that's not unlawful. To remain without authority is not unlawful. Well, if it's not unlawful to remain with the intent to commit a burglary, how can it be unlawful to enter with the intent to commit a burglary to a place that you otherwise seems to be open to the public? Well, again, there's that body of law that says that if you enter with the intent... But there was a body of law before Bradford that said if you remain with the intent, same thing. So what's the logical difference if it's a place... Because the intent with entering the store had to do with, well, that intent vitiated your authority to be there. That's correct. Just like before, if you formed it once you got in the store, that newly formed intent just debunked your authority to remain. You've got to get out. Oh my gosh, I'm going to steal something. I better run out the door. And so what's the difference? Because they say you have authority to be... Bradford seems to say even if you've got the intent to commit a theft, you have the authority to remain in areas open to the public in that store. Well, then, if you've got the... Even with the intent to commit a theft, if you've got the authority to remain there, why don't you have the authority to enter there? Well, I can't actually answer that except to say that this is, you know, it's a different fact pattern. But it seems to me that what the court wanted to do in Bradford, they just don't like the burglary, okay? But the legislature defined the crime. And this fact pattern fits that crime. What do you understand be the genesis of this retail theft act in 75? I'm speculating probably 75. I think it probably came from, you know, certainly pressure from retail to do something about the fact that people would walk into, you know, their establishment, pick up property, and walk out of it. Was it because they found that prosecution under burglary was more difficult? Sure. It is more difficult. The only reason that act exists is because it would be more likely to be punished, the act. Yes. Yes. And therefore, it is a deterrent to people who would want to come in and take my property and leave without paying for it. Burglary is more difficult to prove under these circumstances. But in this case, it wasn't too difficult. He made it easy. Which would be the backpack issue? Yeah. Yeah. Coming out, taking the property out, putting it in the backpack, going back in. And the same would be true with these folks who've got these bags with false bottoms and stuff. Yes. Yes. You could prove a burglary in a case like that. The definition in the statute, if you wanted to. Well, I understand what the statute says, but I'm in line with what the Supreme Court just said in Bradford. I dispute that Bradford actually applies to this pattern, but that's what I think they were after. They didn't reverse an entire body of law, though, in order to do it. Any more questions? No, that's good. Thank you. Thank you, counsel. Counsel, you may reply. Thank you. Just very briefly, to answer Justice Holder's initial question to me about the legislative history, I misspoke a little bit. The Bradford case did actually specifically cite the legislative history, quoting a state representative who said that the purpose behind that statute was to combat the growing problem of retail theft in Illinois. So in light of that legislative history, among the many other factors that Bradford Court discussed, they said that the retail theft statute now occupies the field for this particular form of theft. After Bradford, there's absolutely no reason, it does not hinge at all on when the intent to steal was formed. And just further evidence of this, Your Honors, returning to Justice Smith's reference to booster bags and items like that, the retail theft statute contemplates an intent that's developed before the entry to the store, because one subsection of that statute criminalizes the carrying in of items like booster bags and any other items to disguise the stolen items that you take. So it clearly manifests legislature's contemplation of an intent that's developed before the entry to the store. So Bradford applies seamlessly to unlawful entry burglary. There's no logical or legal reason why it should not apply in this case. And under Bradford, Mr. Johnson's burglary conviction should be reversed. Thank you very much. Thank you, Counsel. Both of your arguments in this matter will be taken under advisement and written disposition shall issue. The court will stand in recess until 1 p.m. this afternoon. Is this your first opportunity? Yes, my first time out here. Oh, you got out of Chicago, got to see the real courtroom, right? Well, welcome. I hope you had a pleasant experience. Thank you, Your Honor. You're welcome. Okay, thank you. Thank you, Your Honor. The court stands in recess.